IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Criminal Action No. |
| ) | 14-06008-01-CR-SJ-DGK |
| WENDELL EUGENE THARP, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION
TO ACCEPT DEFENDANT'S GUILTY PLEA**

On November 30, 2015, I held a change-of-plea hearing after this case was referred to me by United States District Judge Greg Kays. I find that defendant's plea was voluntary and therefore recommend that it be accepted.

*I.  BACKGROUND*

On May 21, 2014, an indictment was returned charging defendant with one count of conspiracy to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(B); one count of conspiracy to commit money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) and (h); one count of possessing a firearm in connection with a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c); one count of possession of a firearm and ammunition while an unlawful user of or addicted to illegal drugs, in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2); one count of maintaining premises for drug activity, in violation of 21 U.S.C. §§ 856(a) and (b); and one count of criminal forfeiture pursuant to 21 U.S.C. § 853. Judge Kays referred this case to me for conducting a change-of-plea hearing and issuing a report and recommendation on whether to accept the plea. The hearing was held on November 30, 2015. Defendant was present, represented by Kenneth Hensley. The government was represented by Assistant United States Attorney Bruce Rhoades.

The proceedings were recorded and a transcript of the hearing was filed on December 1, 2015 (document number 34).

## II. AUTHORITY OF THE COURT

The authority of federal Magistrate Judges to conduct proceedings is created and defined by the Magistrates Act, 28 U.S.C. § 636. Besides certain enumerated duties, the Act provides that a "magistrate may be assigned such additional duties as are not inconsistent with the Constitution and the laws of the United States." 28 U.S.C. § 636(b)(3).

The Eighth Circuit, following the reasoning of several other circuits, has held that Magistrate Judges may preside over allocutions and pleas in felony cases, so long as certain procedural safeguards are met. United States v. Torres, 258 F.3d 791, 795-96 (8th Cir. 2001); see also United States v. Dees, 125 F.3d 261 (5th Cir. 1997), United States v. Williams, 23 F.3d 629 (2d Cir. 1994). The reasoning applied by the appellate courts relies upon previous opinions by the United States Supreme Court that conducting jury *voir dire* falls within a Magistrate Judge's "additional duties" when the defendant has consented. United States v. Torres, 258 F.3d at 795 (citing Peretz v. United States, 501 U.S. 923 (1991), Gomez v. United States, 490 U.S. 858 (1989)).

In Peretz, the Supreme Court held that when a defendant consents to a Magistrate Judge's involvement in *voir dire*, he waives any objection based on his right to have an Article III judge hear his felony case. 501 U.S. at 936. Moreover, the availability of de novo review by a District Judge preserves the structural guarantees of Article III. United States v. Torres, 258 F.3d at 795. Applying the Peretz holding and the reasoning of Williams, the Eighth Circuit held that the acceptance of guilty pleas bears adequate relationship to duties already assigned by the Magistrates Act in that "[a]n allocution is an ordinary garden variety type of ministerial function that magistrate judges commonly perform on a regular basis." Id. Plea allocutions are substantially similar to evidentiary proceedings explicitly assigned by the Act. Id. at 796

2

(citing United States v. Dees, 125 F.3d at 265). Even if taking a guilty plea were considered to be of greater importance than those duties already assigned, the consent of the defendant saves the delegation. Id. "Consent is the key." Id. (quoting United States v. Williams, 23 F.3d at 633).

The Torres court also addressed the implications of such a delegation for Article III's case and controversy clause. Id. Because plea proceedings are submitted to the district court for approval, the court retains ultimate control over the proceedings and is not bound to accept a plea taken by a Magistrate Judge. Id. Moreover, the district court's *de novo* review of the plea proceedings contributes to the ministerial nature of the Magistrate Judge's role. Id.

Based on the above, I find that, with the consent of the defendant, the district court may properly refer a felony case to a Magistrate Judge for conducting a change-of-plea hearing and issuing a report and recommendation on whether the plea should be accepted. Both parties consented to me holding the change-of-plea hearing and issuing a report and recommendation (Tr. at 6-7).

### III. *FINDINGS OF FACT*

1. On May 21, 2014, an indictment was returned charging defendant with conspiracy to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(B) (count one); conspiracy to commit money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) and (h) (count two); and possession of a firearm and ammunition while an unlawful user of or addicted to marijuana and methamphetamine, in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2) (count four); in addition to one forfeiture allegation (Tr. at 7-9). Defendant understood the charges and the forfeiture allegation (Tr. at 7-12).

2. The statutory penalty for count one is not less than 5 years in prison and not more than 40 years in prison, not less than 4 years on supervised release, a fine of not more

3

than $5 million, and a $100 mandatory special assessment (Tr. at 12). The statutory penalty for count two is not more than 20 years in prison, not less than 3 years on supervised release, a fine of not more than $500,000, and a $100 mandatory special assessment (Tr. at 12). The statutory penalty for count four is not more than 10 years in prison, not more than 3 years on supervised release, a fine of up to $250,000, and $100 special assessment (Tr. at 12). The forfeiture count alleges a loss of approximately $39,200 (Tr. at 11). Defendant understood the charges and potential penalties (Tr. at 11-13).

3. Defendant was advised of the following:

    a. That he has a right to a trial by jury of at least 12 individuals and that their verdict must be unanimous (Tr. at 13);

    b. That he has the right to assistance of counsel throughout the trial (Tr. at 13);

    c. That he is presumed innocent, and the government has the burden of coming forward to prove defendant's guilt beyond a reasonable doubt (Tr. at 14);

    d. That defendant's attorney would have the opportunity to cross examine the government witnesses (Tr. at 14);

    e. That defendant would have an opportunity to subpoena witnesses to testify on his behalf (Tr. at 15);

    f. That defendant would have an opportunity to testify on his own behalf, but that he would not be required to and the jury would be instructed that they could not draw an adverse inference if he chose not to testify (Tr. at 14-15); and

    g. That defendant would have an opportunity to appeal any conviction to the Eighth Circuit Court of Appeals (Tr. at 15-16).

4. Defendant was informed and understood that by pleading guilty, he is giving up all of the rights described above (Tr. at 16).

5. Defendant was informed that during the change-of-plea proceeding, he would be placed under oath and questioned by counsel and the judge (Tr. at 16). Defendant was further informed that he must answer questions truthfully while under oath (Tr. at 16). Defendant stated that he understood (Tr. at 16-17).

6. Defense counsel had full access to the government's file and agreed that his review of the evidence and his independent investigation confirmed that the facts were as alleged by the government and that it is in the defendant's best interest to plead guilty (Tr. at 17, 19).

7. Government counsel stated that its evidence would show that:

> [D]uring the dates charged in the Indictment, this defendant, within the Western District of Missouri, distributed methamphetamine and also . . . used money from the distribution of methamphetamine to purchase additional amounts of methamphetamine with the intent that that additional methamphetamine would be distributed. And further, that on at least one occasion during the dates charged in the Indictment, he was in possession of at least one firearm that had not been manufactured within the state of Missouri. . . . [D]uring those dates [of] possession of at least one firearm, he was a known drug user. . . . [There is evidence] about approximately seven different controlled drug purchases conducted within the Western District from this defendant. . . . [A] search [was] conducted of this defendant's residence within the Western District of Missouri . . . where firearms were recovered and where small amounts of methamphetamine were also recovered. . . . [There is evidence of a witness's] involvement with this defendant in obtaining methamphetamine and in distributing methamphetamine. . . . [The government] bought approximately 45 grams [of methamphetamine in controlled transactions. The government] recovered another small amount and there was testimony that was provided through the discovery of additional amounts that were distributed to other people.

(Tr. at 18, 21).

8. Defendant was placed under oath (Tr. at 19) and admitted the following:

With respect to count one, from January 1, 2009, to May 20, 2014, defendant was in the Western District of Missouri and he and at least one other individual had an agreement that he would engage in unlawful distribution of methamphetamine (Tr. at 20, 23, 31). Although defendant stated that he was not sure whether he sold at least 50 grams (Tr. at 20-23), he subsequently admitted that he had been using methamphetamine for a number of

5

years, he used it almost daily for a while, he purchased methamphetamine from others with whom he had an agreement to carry on methamphetamine transactions, he resold some of the methamphetamine he had purchased, and in doing this he was financing his own methamphetamine habit by purchasing more drugs with the money he made from his drug sales (Tr. at 26-27).[1]  He admitted that he acquired methamphetamine and distributed it, and he ultimately admitted that he distributed at least 50 grams of methamphetamine (Tr. at 30-31).  At the time he distributed methamphetamine, defendant knew it was illegal to do so (Tr. at 23).  He did it knowingly and intentionally (Tr. at 23).

With respect to count two, from January 1, 2009, through May 20, 2014, he was in the Western District of Missouri, he was involved with at least one other individual, and during that period of time he was involved with financial transactions that were for the purpose of continuing the distribution of methamphetamine, i.e., he purchased methamphetamine and sold it for enough money to buy more methamphetamine for sale and to buy methamphetamine for his own use as well (Tr. at 32-33).  He did not report his earnings from drug sales to the IRS; he used it to purchase more methamphetamine (Tr. at 27).

With respect to count four, on October 3, 2013, he had in his possession at his residence in Spickard, Missouri,[2] several firearms including a Ruger .22-caliber pistol and a Kel-Tec 9 millimeter pistol; and at that time, he was a user of methamphetamine and

---

[1]Question: "The Indictment that we're discussing, Count One charges between January 1 of '09, and May 20th of 2014, that you did knowingly and intentionally conspire or agree with others to distribute 50 grams or more of a mixture or substance containing a detectible amount of methamphetamine.  Did you do that?"  Answer: "Yes." (Tr. at 26).

Question: "And then you're telling this court that you are guilty of Count One, conspiring to distribute 50 grams or more of methamphetamine, is that true?  You're pleading guilty to that, is that correct?"  Answer: "Yes."  Question: "And you're telling this court you did that?"  Answer: "Yes." (Tr. at 29).

[2]I will take judicial notice of the fact that Spickard, Missouri, is in Grundy County, located in the Western District of Missouri, St. Joseph Division.

marijuana (Tr. at 28-29, 33-34). Defendant does not dispute that the firearms were not manufactured in Missouri (Tr. at 34).

9. Defendant is familiar with the plea agreement, discussed it with his attorney, and understands it (Tr. at 34, 44). In addition, I went over the plea agreement with the defendant (Tr. at 34-42).

10. No one made any threats or promises to get defendant to plead guilty (Tr. at 42-43).

11. Defendant is satisfied with the advice and guidance he has received from Mr. Hensley (Tr. at 43). There is nothing he wanted Mr. Hensley to do that he did not do, and there is nothing Mr. Hensley has done that defendant did not want him to do (Tr. at 43).

12. Defendant is 55 years of age and attended school through part of ninth grade (Tr. at 43-44). He is able to read, write, and understand English (Tr. at 44). Defendant has no mental health or substance abuse issues (Tr. at 43-44).

13. Defendant tendered a plea of guilty to count one, count two, and count four of the indictment, as well as to the forfeiture count (Tr. at 45).

## IV.   *ELEMENTS OF THE CHARGED OFFENSE*

The elements necessary to sustain a conviction for conspiracy to distribute methamphetamine are:

1. Two or more persons reached an agreement or came to an understanding to distribute and to possess with intent to distribute at least 50 grams of methamphetamine;

2. The defendant voluntarily and intentionally joined in the agreement or understanding, either at the time it was first reached or at some later time while it was still in effect; and

3. At the time the defendant joined in the agreement or understanding, he knew the purpose of the agreement or understanding.

Eighth Circuit Model Criminal Jury Instruction 6.21.846A

The elements necessary to sustain a conviction for conspiracy to commit money laundering are:

1. An agreement to launder money;

2. The defendant's voluntary joinder of the agreement; and

3. The defendant's knowing joinder of the agreement.

United States v. Hoffman, 707 F.3d 929, 934 (8th Cir. 2013).

The elements necessary to sustain a conviction for possessing a firearm while an unlawful user of or addicted to methamphetamine are: The defendant used methamphetamine during the time, but not necessarily at the exact same moment, that he possessed a firearm which had previously been transported across state lines. United States v. McIntosh, 23 F.3d 1454, 1458 (8th Cir.), cert. denied, 513 U.S. 935 (1994). See also United States v. Purdy, 264 F.3d 809 (9th Cir. 2001).

V. CONCLUSION

Based on the above, I make the following conclusions:

1. The district court may lawfully refer this case to a Magistrate Judge for issuance of a report and recommendation on whether defendant's guilty plea should be accepted.

2. Defendant knowingly and voluntarily pleaded guilty to conduct establishing every element of counts one, two, and four of the indictment and the forfeiture allegation.

Therefore, it is

RECOMMENDED that the court, after making an independent review of the record and the applicable law, enter an order accepting defendant's guilty plea and adjudging defendant guilty of those offenses as well as the forfeiture count.

8

Counsel are advised that, pursuant to 28 U.S.C. § 636(b)(1), each has 14 days from the date of this report and recommendation to file and serve specific objections.

/s/ Robert E. Larsen
ROBERT E. LARSEN
United States Magistrate Judge

Kansas City, Missouri
December 1, 2015